UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JEAN ANDRE PIOVANETTI,

                Plaintiff,

v.                                                Case No. 23-cv-1619-pp

GOVERNOR TONY EVERS, *et al.*,

                Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2), SCREENING COMPLAINT UNDER 28 U.S.C. §1915A AND DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION (DKT. NO. 7)**

      Jean Andre Piovanetti, who is incarcerated at Oshkosh Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his rights under federal and state law. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, denies his motion for a preliminary injunction, dkt. no. 7, and screens his complaint, dkt. no. 1.

**I.    Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

      The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then

must pay the balance of the $350 filing fee over time, through deductions from his prison trust account. Id.

On December 11, 2023, the court ordered the plaintiff to pay an initial partial filing fee of $11.33. Dkt. No. 5. The court received that fee on December 18, 2023. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay the remainder of the filing fee over time in the manner explained at the end of this order.

**II. Screening the Complaint**

    A.    Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated person raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

A "frivolous" complaint "lack[s] an arguable basis either in law or fact." Felton v. City of Chicago, 827 F.3d 632, 635 (7th Cir. 2016) (quoting Neitzke v. Williams, 490 U.S. 319, 325 (1989)). A complaint is factually frivolous if its allegations are "clearly baseless," "fanciful," "fantastic," "delusional," "irrational," or "wholly incredible." Id. (quoting Denton v. Hernandez, 504 U.S. 25, 32–33 (1992)). Allegations that are merely "unlikely," "improbable," or "strange," do not meet this standard. Id. (quoting Denton, 504 U.S. at 33). A

claim is legally frivolous if it is "based on an indisputably meritless legal theory." Id. (quoting Neitzke, 490 U.S. at 327–28). A "malicious" complaint is one brought for purposes of harassment. Heard v. Blagojevich, 216 F. App'x 568, 570 (7th Cir. 2007) (citing Lindell v. McCallum, 352 F.3d 1107, 1109 (7th Cir. 2003)).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, "accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. County of Milwaukee, 570 F.3d

824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.    The Plaintiff's Allegations

The complaint concerns events that allegedly occurred while the plaintiff was a pretrial detainee at the Brown County Jail. Dkt. No. 1 at ¶2. The complaint names as defendants Wisconsin Governor Tony Evers, Brown County, the Brown County District Attorney's Office, the Brown County Sheriff's Department Jail Division, Well Path Health Care Services, Deputy District Attorney Wendy W. Lemkuil, Brown County Sheriff Todd. J. Delain, Jail Captain Heidy J. Michel, nurses Diane Jensen and Leah Hamby, Lieutenant Michael C. Halasi, and Corporals Zachary N. Bergh, Matthew M. West, Kurt M. Voster, Dustin R. Dimmer, Mitchell R. Vetsch and Kayla M. Kuchta. Id. at ¶¶9–17. The plaintiff sues the defendants in their individual and official capacities. Id. at ¶18.

The complaint addresses several events that the plaintiff says occurred during his incarceration at the jail "over a duration of time between February 23, 2019 and December 02, 2020." Id. at ¶¶7, 19. He first alleges that on April 7, 2018, District Attorney Lemkuil "filed criminal complaint" against him with the Brown County Circuit Court while the plaintiff was detained at the jail. Id. at ¶20. On September 9, 2019, after the plaintiff's pretrial hearing, he was returned to the jail. Id. at ¶20. He says that immediately after he arrived, he

4

called his family and sent them text messages through the jail's kiosk system, which "he usually was doing daily." Id. On September 11, 2019, he again attempted to contact his family and his attorney, but he was not able to reach them. Id. at ¶22. The plaintiff says that "after multiple unsuccessful attempts to access the inmates Securus Phone System, [his] security pin number was blocked." Id. He alleges that, based on public records he obtained, Lemkuil "took steps outside her prosecutorial duties . . . to induce other government officials or employees of Brown County Sheriff Department." Id. at ¶23. He says that Lemkuil "solicit[ed] jail officials to impose permanent and arbitrary punitive restrictions, in violation to government agency policy and pretrial detainee constitutional protections." Id. The plaintiff asserts that Sheriff Delain aided Lemkuil's "inappropriate request" and ordered Captain Michel "to take disciplinary actions against" the plaintiff "without any legitimate security reasons" and "without affording prior notice of the disciplinary action" or providing him a hearing. Id. at ¶24.

The plaintiff asked his housing unit officer (not a defendant) for "an explanation on why he could not make calls." Id. at ¶25. The officer did not know and told the plaintiff to file a grievance, which he did. Id. at ¶¶25–26. The plaintiff says that "administrative officials restricted him from access to the inside Jail Kiosk turnkey communication system" and did not provide him notice beforehand. Id. at ¶27. He says that he was unable to request healthcare or communicate with his attorney and family. Id. The plaintiff alleges that on September 12, 2019, Corporals West and Bergh denied his grievance, noting

that the restrictions on "his communications with everyone outside jail" were within Sheriff Delain's authority. Id. at ¶28. He says West and Bergh did not speak with him in person and "respond[ed] with evil intent to [his] grievance." Id. at ¶29. The plaintiff claims West, Bergh and Sheriff Delain were working with Lemkuil to violate his First, Sixth and Fourteenth Amendment "compulsory due process rights." Id. He says no one informed him whether he had violated jail rules, received a disciplinary report or been charged with a new criminal complaint. Id. at ¶30.

The plaintiff alleges that on November 4, 2019, he told the judge in his state court criminal case about his grievance and issues at the jail, but that he did not have "sufficient evidence or documents to prove his allegation." Id. at ¶31. He also asked his attorney to tell the court about his issues, but his attorney "did not fully complied [*sic*] with Plaintiff request and only Stated" that the plaintiff had "concerns" about being able to contact others while at the jail. Id. at ¶¶33–34. He alleges that the judge told the plaintiff that these issues were "not his problem." Id. at ¶35. The plaintiff alleges that documents he has since received "reflect a suspicious chronology of events that are sufficient to raise an inference of a retaliatory motive." Id. at ¶32. He says these documents show that jail staff have been "misleading [him] with false information to make him believe the disciplinary actions were in place due to court order." Id.

The next day—November 5, 2019—the plaintiff filed a second grievance about his concerns. Id. at ¶36. On November 6, 2019, Corporal Voster responded to the grievance, telling the plaintiff that Captain Michel reported

6

the plaintiff would not be allowed outside communications "Due to Court Order." Id. at ¶37. The plaintiff says he still had not spoken with jail staff, and he says that the information given to him was false. Id. at ¶38. He alleges that he was held "in such unusual situation of toxic cruel isolation" and was not able to contact any law offices, including the public defender, through February 22, 2020. Id. at ¶¶39–40. He says he was unable to speak with his loved ones for fifteen months, and that jail staff read and scanned all his mail under orders from Lemkuil. Id. at ¶¶41–42. He claims that no other pretrial detainee faced such harsh restrictions during this time. Id. at ¶43.

The plaintiff alleges that on February 20, 2020, he told Bergh that he was feeling sick, and Bergh said he would notify a nurse "via Email about his illness." Id. at ¶45. The plaintiff says he "was left sick" for thirty days "without any adequate medical attention." Id. at ¶46. He alleges that Nurses Jensen and Hamby, who work for Well Path, "fail[ed] to render aid." Id. The plaintiff says he "was one of the first pretrial detainees in custody of the Brown County Sheriff suffering COVID-19 Symptoms." Id. He says that the restrictions that kept him from requesting healthcare services contributed to him developing high fever, respiratory infection, cough, throat pain, fluid in his lungs, difficulty breathing, pain, anger and depression. Id. at ¶47.

The plaintiff alleges that in February 2020, Lemkuil acknowledged a grievance that he had filed against her with "the Supreme Court office of Lawyer Regulation," in which he alleged "prosecutorial misconduct activity." Id. at ¶49. He says that in response, "the Sheriff Department jail division began a

retaliatory campaign constantly fabricating minor conduct reports against [him], locking [him] down in his cell for periods of 24 up to consecutive 72 hours in weekly a basis [*sic*]." Id.

The plaintiff separately alleges that at some unspecified time, Sheriff Delain "close[d] down" the jail library and "[e]stablished his own policy in Brow[n] County Jail that subjected the Plaintiff and all other pretrial detainees, inmates, and witnesses, to do [their] legal work and law library research inside a filthy degrading 4'x 6' [*sic*] handicap shower stall." Id. at ¶50. He says he was not provided a desk, books, a computer, a typewriter or a printer. Id. The plaintiff says he filed a grievance about this issue, "despite being threatened by" Bergh. Id. He claims that Delain and Bergh "prevented [him] from being capable to do adequate research or write an adequate motions [*sic*]" without these resources. Id. at ¶51. He says he suffered "high levels of psychiatric symptoms" from these conditions. Id. at ¶52.

The plaintiff claims that the defendants' actions violated his rights under federal and state law. Id. at ¶¶53–59. He seeks a declaration that the defendants violated his rights. Id. at ¶61. He also seeks injunctive relief ordering the Wisconsin Department of Corrections and Oshkosh Correctional Institution "to stop immediately the depravation of access to Plaintiff court case and discovery records, that are relevant to" his Brown County criminal case. Id. at ¶62. He also seeks "a temporary and permanent no contact order against Brown County Jail" and an order forbidding the plaintiff from again being

8
Case 2:23-cv-01619-PP   Filed 03/25/24   Page 8 of 19   Document 15

housed at Brown County Jail. Id. He also seeks compensatory and punitive damages. Id. at ¶¶63–65.

C. Analysis

There are two overarching problems with the complaint. First, it seeks to proceed on various unrelated claims against different defendants for unrelated conduct that occurred over at least twelve months. While it is acceptable for a plaintiff to bring multiple claims against a single defendant in the same lawsuit, a plaintiff cannot bring *unrelated* claims against different defendants in the same case. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007); Fed. R. Civ. P. 18(a) and 20(a)(2). "Joinder that requires the inclusion of extra parties is limited to claims arising from the same transaction or series of related transactions." Wheeler v. Wexford Health Sources, Inc., 689 F.3d 680, 683 (7th Cir. 2012). In other words, the plaintiff may bring in one lawsuit all his claims against Sheriff Delain, but he may add his claim against Well Path (for example) "only if both claims arise 'out of the same transaction, occurrence, or series of transactions or occurrences.'" Id. (citing Fed. R. Civ. P. 20(a)(1)(A)); id. ("A litigant cannot throw all of his grievances, against dozens of different parties, into one stewpot.").

The plaintiff's complaint violates Rules 18 and 20 because he seeks to bring several unrelated claims against several different defendants. The plaintiff claims that beginning in September 2019, Lemkuil conspired with Sheriff Delain and other jail staff to impose limitations on his right to contact people outside the jail or request medical attention. He says that in February

2020, jail officials began retaliating against him for filing a complaint against Lemkuil by charging him with fabricated, minor conduct violations. He alleges that the same month, he became ill but received inadequate medical treatment. He claims that at some point later, the sheriff forced him (and all jail detainees) to do their legal work in a shower stall and without resources. Although some of these claims have defendants in common and may be related, not all of them are. Some, but not all, of the claims share questions of law or fact, but they do not all arise "out of the same transaction, occurrence, or series of transactions or occurrences." That some of these claims occurred close in time does not mean they are legally related.

Ordinarily, the court would reject the plaintiff's complaint "either by severing the action into separate lawsuits or by dismissing the improperly joined defendants." Owens v. Hinsley, 635 F.3d 950, 952 (7th Cir. 2011) (citing Fed. R. Civ. P. 21). In that circumstance, the court would give the plaintiff an opportunity to choose which of the above-described unrelated claims he wants to proceed on in this case. But the court will not do that here because there is another problem with the complaint. Although the plaintiff claims that some or all these deprivations continued until December 2, 2020, there are no allegations in the complaint about anything that occurred between April 2020 and December 2020. The last date on which the plaintiff alleges that anything occurred was March 2020, when he claims that he received inadequate medical treatment for what he believes were symptoms of COVID-19. He then alleges that the sheriff imposed illegal policies, but he does not allege *when* this

occurred or when the policies ended. The court cannot infer a beginning or end date for these policies or for any of the plaintiff's claims from the allegations in the complaint.[1]

The relevant statute of limitation for claims brought under §1983 is "the statute of limitations for personal injuries supplied by the state in which the claim arose." Huber v. Anderson, 909 F.3d 201, 207 (7th Cir. 2018) (citing Wallace v. Kato, 549 U.S. 384, 387 (2007)). The limitation period for §1983 claims arising in Wisconsin is the three-year limitation provision in Wis. Stat. §893.54 (2018). Wisconsin previously allowed a six-year limitation period, but in 2018, it reduced that limitation period to three years. See Huber, 909 F.3d at 207 (citing 2017 Wis. Act 235 (eff. Apr. 5, 2018)) (reducing applicable statute of limitations from six to three years). The three-year limitation period applies to causes of action accruing on or after April 5, 2018.

The plaintiff says that his mistreatment began in February 2019, so the three-year limitation period applies. He signed the complaint in this case on November 30, 2023, so the court considers that to be the filing date. Dkt. No. 1 at 14; see Taylor v. Brown, 787 F.3d 851, 859 (7th Cir. 2015). That means the complaint is untimely for any claims that occurred before November 30, 2020. And as the court has noted, *all* the plaintiff's allegations involve events or claims that occurred before November 2020. That means that all of the claims

---

[1] The Wisconsin Department of Corrections Offender Detail website shows that on December 2, 2020, the plaintiff was transferred from the Brown County Jail to Dodge Correctional Institution. See https://appsdoc.wi.gov/lop/home/home (DOC #695313). The court suspects that the plaintiff believes (or means to imply) that the violations continued to occur until his release from the jail.

11
Case 2:23-cv-01619-PP   Filed 03/25/24   Page 11 of 19   Document 15

the plaintiff alleges in the complaint are untimely, and the court must dismiss the complaint.

It is possible that some events not dated or detailed in the complaint occurred after, or continued until, November 30, 2020. If so, those allegations might state a claim on which the plaintiff may proceed. But the complaint does not make clear which alleged events, if any, occurred on or continued after November 30, 2023. Because the plaintiff may be able to state a claim by providing additional detail, the court will give him an opportunity to amend his complaint to correct the deficiencies the court has described and better explain the claims in his complaint.

When writing his amended complaint, the plaintiff should provide the court with enough facts to answer the following questions: 1) Who violated his constitutional rights?; 2) What did each person do to violate his rights?; 3) Where did each person violate his rights?; and 4) When did each person violate his rights? The amended complaint does not need to be long or contain legal language or citations to statutes or cases, but it *does* need to provide the court and each defendant with notice of what each defendant allegedly did or did not do to violate his rights.

The court is enclosing a copy of its amended complaint form. The plaintiff must list the case number for this case on the first page. He must list all the defendants he wants to sue in the caption of the amended complaint. He should use the spaces on pages two and three to explain the key facts that give rise to the claims he wishes to bring, and to describe which defendants he

believes committed the violations that relate to each claim. If there is not enough space on those pages, the plaintiff may use up to five additional sheets of paper, double-spaced so that the court can read them. The amended complaint takes the place of the prior complaint and must be complete by itself. The plaintiff may not refer the court back to his original complaint. He must repeat in the amended complaint any of the facts from the original complaint that he believes are necessary to his claims.

The court makes a few final points. First, under §1983, a plaintiff may proceed only against "persons" who violated his rights while acting under color of state law. The plaintiff names some non-persons as defendants. The plaintiff may not bring a claim under §1983 against the Brown County District Attorney's Office, see Buchanan v. City of Kenosha, 57 F. Supp. 2d 675, 678–79 (E.D. Wis. 1999), or the Brown County Sheriff's Department, see Whiting v. Marathon Cnty. Sheriff's Dep't, 382 F.3d 700, 704 (7th Cir. 2004). The plaintiff also cannot sue Governor Evers merely because he is the governor of the state of Wisconsin, where the alleged events occurred. See Iqbal, 556 U.S. at 676. He must explain how each individual defendant *personally* "caused or participated in a constitutional violation." Hildebrant v. Ill. Dep't of Nat. Res., 347 F.3d 1014, 1039 (7th Cir. 2003) (quoting Vance v. Peters, 97 F.3d 987, 991 (7th Cir. 1996)).

Second, the plaintiff seeks damages and declaratory and injunctive relief. But most of the defendants the plaintiff has sued are employees of the Brown County Jail, and he no longer is incarcerated there. Because the plaintiff is no

longer incarcerated at the jail, "a declaratory judgment would not affect [the defendants'] behavior towards [the plaintiff]." Pearson v. Welborn, 471 F.3d 732, 743 (7th Cir. 2006) (citing City of Los Angeles v. Lyons, 461 U.S. 95, 103–04 (1983), and Davis v. District of Columbia, 158 F.3d 1342, 1348 (D.C. Cir. 1998)). That means the plaintiff's request for declaratory relief against any Brown County employee is moot. See Bigbee v. Nalley, 482 F. Supp. 2d 1092, 1099 (W.D. Wis. 2007) (citing Robinson v. City of Chicago, 868 F.2d 959, 966 n.5 (7th Cir. 1989), and Higgason v. Farley, 83 F.3d 807, 811 (7th Cir. 1996)).

The plaintiff also cannot seek an injunction imposing a no-contact order between himself and the Brown County Jail and prohibiting him from again being incarcerated at the jail. That request is well beyond the remedial powers of this court in a lawsuit under §1983. Under the PLRA, the plaintiff may seek *limited* injunctive relief, see 18 U.S.C. §3626(a), or monetary damages. The court advises the plaintiff that, if he decides to file an amended complaint, he should carefully read this order and limit his amended complaint to timely, related claims seeking available relief against viable defendants.

### III. Motion for Preliminary Injunction (Dkt. No. 7)

On February 9, 2024, the court received the plaintiff's motion for a preliminary injunction and/or a temporary restraining order. Dkt. No. 7. The plaintiff asks the court to order Oshkosh officials to give him adequate time in the law library to work on this case and his state court criminal case, to give him access to the records from his criminal case and to ensure that he has access to the courts. Id. at 1. He claims that prison officials have "destroyed,

suppressed or illegally seized court case records" in retaliation against him and other incarcerated persons "for exercising [their] rights to grieving and litigate Pro-Se." Id. at 1–2. The plaintiff filed affidavits from himself and five other incarcerated persons whom he says "are also pursue [*sic*] relief for the illegal sentencing, and actual unconstitutional judgment for convictions Pro- Se [*sic*] from OSCI state prison." Id. at 2; Dkt. Nos. 9–14.

"The purpose of a preliminary injunction is to preserve the status quo pending a final hearing on the merits." American Hospital Ass'n v. Harris, 625 F.2d 1328, 1330 (7th Cir. 1980) (citation omitted). "A party seeking a preliminary injunction must satisfy all three requirements in the 'threshold phase' by showing that (1) it will suffer irreparable harm in the period before the resolution of its claim; (2) traditional legal remedies are inadequate; and (3) there is some likelihood of success on the merits of the claim." HH-Indianapolis, LLC v. Consol. City of Indianapolis and Cnty. of Marion, Ind., 889 F.3d 432, 437 (7th Cir. 2018) (citing Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of Am., Inc., 549 F.3d 1079, 1086 (7th Cir. 2008)). Because the third element requires the party seeking injunctive relief to show some likelihood of success on the merits of the claims in his lawsuit, a preliminary injunction is not appropriate when "it deals with a matter lying wholly outside the issues in the suit." Prucha v. Watson, Case No. 2:20-cv-00199, 2021 WL 11086448, at *2 (S.D. Ind. Dec. 15, 2021) (quoting DeBeers Consol. Mines v. United States, 325 U.S. 212, 220 (1945)). "[A] party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed

in the party's motion and the conduct asserted in the complaint." <u>Devose v. Herrington</u>, 42 F.3d 470, 471 (8th Cir. 1994) (citing <u>Penn v. San Juan Hosp., Inc.</u>, 528 F.2d 1181, 1185 (10th Cir. 1975)). <u>See also</u>, <u>Pacific Radiation Oncology, LLC v. Queen's Medical Ctr.</u>, 810 F.3d 631, 636 (9th Cir. 2015) (quoting <u>Devose</u>).

The plaintiff asks the court to enjoin staff at Oshkosh Correctional, ordering them to give him time in the law library and access to records. But his lawsuit alleges mistreatment he received while at the Brown County Jail. The injury he claims he is suffering and for which he requests injunctive relief is not related to the claims in his complaint. If the plaintiff believes that officials at Oshkosh have violated his rights, he must file a separate lawsuit making those claims. He can seek injunctive relief against Oshkosh officials in that lawsuit. He may not do so in this one. If the plaintiff files a separate lawsuit, he will be responsible for paying the filing fee.

### IV. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **DENIES** the plaintiff's motion for a preliminary injunction. Dkt. No. 7.

The court **CONCLUDES** that the plaintiff's complaint fails to state a claim. Dkt. No. 1.

The court **ORDERS** that the plaintiff may file an amended complaint that complies with the instructions in this order. If the plaintiff chooses to file an

amended complaint, he must do so in time for the court to receive it by the end of the day on **April 26, 2024**. If the court receives an amended complaint by the end of the day on April 26, 2024, the court will screen the amended complaint as required by 28 U.S.C. §1915A. If the court does not receive an amended complaint by the deadline, or if the amended complaint does not comply with the instructions in this order, the court will dismiss this case based on the plaintiff's failure to state a claim in his original complaint and will issue him a strike as required by 28 U.S.C. §1915(g).

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$338.67** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the Warden at Oshkosh Correctional Institution.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[2] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

>Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>362 United States Courthouse
>517 E. Wisconsin Avenue
>Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

The court will include with this order a guide prepared by court staff to address common questions that arise in cases filed by incarcerated persons.

---

[2] The Prisoner E-Filing Program is mandatory for all persons incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that the plaintiff may find useful in prosecuting his case.

Dated in Milwaukee, Wisconsin this 25th day of March, 2024.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER
Chief United States District Judge**