UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JEAN ANDRE PIOVANETTI,

                Plaintiff,

v.                                                                        Case No. 23-cv-1619-pp

BROWN COUNTY, *et al.*,

                Defendants.

**ORDER DENYING PLAINTIFF'S MOTION FOR EXTENSION OF TIME TO AMEND COMPLAINT (DKT. NO. 16) AND SCREENING AMENDED COMPLAINT (DKT. NO. 17) UNDER 28 U.S.C. §1915A**

On March 25, 2024, the court screened plaintiff Jean Andre Piovanetti's *pro se* complaint under 42 U.S.C. §1983 and determined that it did not state a claim. Dkt. No. 15. The court explained that the complaint suffered from "two overarching problems": first, it sought "to proceed on various unrelated claims against different defendants for unrelated conduct that occurred over at least twelve months." Id. at 9. The court explained that the plaintiff could not bring all these unrelated claims against different defendants in one lawsuit. Id. at 9–10. The second problem was that the complaint alleged events that occurred between February 2019 and March 2020, but the plaintiff did not file his lawsuit until November 2023. Id. at 10–11. That meant "that all of the claims the plaintiff alleges in the complaint are untimely." Id. at 11–12. The court ordered that by the end of the day on April 26, 2024, the plaintiff must file an amended complaint that addressed these issues. Id. at 16–17. The court explained that the plaintiff needed to make clear in his amended complaint which alleged

1

events occurred on or after November 30, 2020, because only those claims would be timely. Id. at 12. The court also denied the plaintiff's motion for a preliminary injunction. Id. at 16.

On April 29, 2024, the court received the plaintiff's amended complaint (Dkt. No. 17) and a motion requesting additional time to amend his complaint further (Dkt. No. 16). This order denies the plaintiff's request for additional time to amend his complaint and screens the amended complaint.

**I.     Screening the Amended Complaint**

    A.     Federal Screening Standard

As the court explained in the previous order, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated person raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the amended complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, the amended complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The amended complaint

2

must contain enough facts, "accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court liberally construes complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.   The Plaintiff's Allegations

Like the original complaint, the amended complaint concerns events that allegedly occurred while the plaintiff was a pretrial detainee at Brown County Jail. Dkt. No. 17 at ¶5. The amended complaint does not name all the same defendants as the original. It names Brown County, Brown County Deputy District Attorney Wendy W. Lemkuil, Brown County Sheriff Todd J. Delain, Jail Captain Heidy J. Michel, Lieutenant Michael C. Halasi and Corporals Zachary N. Bergh, Matthew M. West, Kurt M. Voster, Dustin R. Dimmer, Mitchell R.

Vetsch and Kayla M. Kuchta. Id. at ¶¶10–20. The plaintiff sues the defendants in their individual and official capacities. Id. at 1 and ¶21.[1]

The amended complaint addresses the same alleged events as the original, which the plaintiff says occurred during his incarceration at the jail "between February 23, 2019 and December 02, 2020." Id. at ¶8. The plaintiff alleges that on April 7, 2018, while he was detained at the jail, District Attorney Lemkuil filed a criminal complaint against him in state court for unspecified charges. Id. at ¶23. On September 11, 2019, the plaintiff noticed that he could not access the Securus Phone System or Jail Kiosk at the jail. Id. at ¶24. He says that when he attempted to contact his defense attorney and his family, he was told that his access pin "was blocked." Id. at ¶25. The plaintiff asked his housing unit officer (not a defendant) for "an explanation on why he could not make calls." Id. at ¶26. The officer did not know and told the plaintiff to file a grievance, which the plaintiff did. Id. at ¶¶27–28.

The plaintiff alleges that on September 12, 2019, he received a "surprise notice" that "he was placed under Mayor [*sic*] disciplinary restrictions." Id. at ¶30. He alleges that Corporals West and Bergh denied his grievance but did not explain their decision in person; he says they noted only that the restrictions on "his communications with everyone outside jail" were within Sheriff Delain's authority. Id. The plaintiff alleges that this response "was inaccurate or false

---

[1] The plaintiff also names defendant D. Jensen in the body of the amended complaint, but not in the caption. Dkt. No. 17 at 1, ¶21. The amended complaint contains no allegations against this defendant. The court infers that the plaintiff mistakenly left in this paragraph and does not wish to proceed against defendant Jensen.

information," based on "public records" he since has received. Id. at ¶31. He asserts that West and Bergh were deliberately indifferent "for not affording the d[u]e process rights the[y] afforded to all other county jail inmates and pretrial detainees." Id. at ¶32. He says the "Mayor [*sic*] disciplinary restrictions and violation to [his] constitutional rights continued until December 02, 2020." Id.

The plaintiff alleges that on November 4, 2019, he asked his defense attorney to tell the judge in his state court criminal case about his grievance and issues at the jail. Id. at ¶34. He says that his attorney "did not fully complied [*sic*] with Plaintiff request and only Stated" that the plaintiff had "concerns" about being able "to use law library or make calls" at the jail. Id. at ¶35. The plaintiff alleges that the judge told him that these issues were "not [the judge's] problem." Id. at ¶36.

The next day (November 5, 2019), the plaintiff filed a second grievance about his concerns. Id. at ¶37. On November 6, 2019, Corporal Voster responded to the grievance, telling the plaintiff that Captain Michel reported that the plaintiff would not be allowed outside communications "Due to Court Order." Id. at ¶38. The plaintiff says he still had not spoken with jail staff, and he says that the information given to him was false. Id. at ¶39. The plaintiff asserts that the defendants "did not comply or followed [*sic*] policies and rules, that are clearly stablished [*sic*] by the Brown County" and did not afford him "the right to a fair and impartial disciplinary hearing." Id. at ¶40. The plaintiff also alleges that "[f]or approximately two years," his mail was "restricted,

5

withheld, seized, censor, scanned, and return mail [*sic*]." Id. at ¶41. He does not say who restricted his mail or when this restriction began or ended.

The plaintiff alleges that on February 20, 2020, Voster told the plaintiff that he "could not communicate with attorneys' offices, and allegedly he attempted to restore and update [the plaintiff's] limited access to the phone so he could contact the public defender offices." Id. at ¶42. The plaintiff does not say whether these services were restored. But he alleges that he was the only pretrial detainee subjected to this restriction, which he says amounted to "deliberate indifference with evil intent." Id. at ¶43. Yet he also alleges that officers at the jail "don't ever provide [him] or all other people incarcerated" a minor or major conduct report to sign or review. Id. at ¶46. He says he "was never afforded the opportunity to context [*sic*] any conduct report or accusation, never afforded a fair and impartial disciplinary hearing for anything he was disciplined fore [*sic*]." Id. at ¶44. The plaintiff alleges that he was placed on lockdown status for up to forty-eight hours, but he does not say who locked him down or when this occurred. Id. at ¶45. The plaintiff claims, "There's no due process at all in Brown County Jail at all relevant times I was there incarcerated." Id. at ¶46.

The plaintiff next alleges that he was denied access to the kiosk system used by jail detainees to request health care services. Id. at ¶48. He alleges that on February 20, 2020, he told Bergh that he was feeling sick and described his symptoms. Id. at ¶49. He says that Bergh knew the plaintiff "was the only inmate that was not allowed to file sick calls or request health care services on

6

his own," so Bergh told the plaintiff that he would notify a nurse "via Email about his illness." Id. at ¶50. The plaintiff says he "was severely sick" for thirty days, but that each request he submitted for medical attention was returned with a message stating, "you will be seen on the next avalible [*sic*] appointment." Id. at ¶51 (all caps omitted).

The plaintiff alleges that in February 2020, Lemkuil acknowledged a grievance that the plaintiff had filed against her with "the Supreme Court Office of Lawyer Regulation," in which he alleged "prosecutorial misconduct activity." Id. at ¶52. He says that in response, "the Sheriff Department jail division began a retaliatory campaign constantly fabricating minor conduct reports against [him], locking [him] down in his cell for periods of 24 up to consecutive 72 hours in weekly a basis [*sic*]." Id. He says that public records he received in May 2023 "reflect a suspicious chronology of events that are sufficient to raise an inference of a retaliatory motive" against jail staff. Id. at ¶53. The plaintiff alleges that Voster and Michel provided him "false information to make him believe the disciplinary actions were in place due to court order." Id. He says that these records show that in September 2019, Lemkuil "contacted the Brown County Sheriff Department to request that [the plaintiff] be restricted from all source of communications outside county jail." Id. He says this was done despite him not receiving a new charge, modification of his record or sentence. Id. Sheriff Delain and Captain Michel then implemented the alleged restrictions "for no legitimate security reasons" and without providing the plaintiff a disciplinary hearing. Id. at ¶55. He claims that Lemkuil conspired

7

with Delain and Michel "to impose arbitrary and permanent disciplinary restrictions against" him and to prevent him from "communicat[ing] properly like all other inmates detained at Brown County Jail," which "caused lack of urgent medical attention" from February 20, 2020, to sometime in March 2020. Id. at ¶57.

The plaintiff claims that the defendants deprived him of all communication with his attorney and family for 447 days. Id. at ¶60. He claims that the defendants' actions violated his rights under federal and state law. Id. at ¶¶62–67. He seeks a declaration that the defendants violated his rights. Id. at ¶69. He also seeks injunctive relief ordering the defendants "to cease the violations to clearly stablished [*sic*] policies of standard procedures," to provide "all inmates and pretrial detainees procedural due process guaranteed by Brown county Jail policy" and to end all "illegal unlawful arbitrary and permanent restrictions" on any incarcerated person at the jail. Id. ¶70. Finally, the plaintiff seeks compensatory and punitive damages against each defendant. Id. at ¶¶71–72.

C. Analysis

Unlike the original complaint, the amended complaint does not seek to proceed against different defendants on unrelated claims. But like the original complaint, it concerns events that occurred outside of the three-year limitation period. As the court explained in its March 25, 2024 order, the plaintiff signed the original complaint on November 30, 2023, which the court considers the filing date. Dkt. No. 15 at 11. Because Wisconsin's three-year statute of

8

limitations applies to §1983 claims, the amended complaint (like the original) "is untimely for any claims that occurred before November 30, 2020." Id.

The plaintiff realleges most of the claims from his original complaint, which concerns events from February 2019 through December 2, 2020 at the latest (because that is when he was transferred to another institution). Although the allegations in the amended complaint are not organized in chronological order and are not easy to understand, the court reads the amended complaint to allege that Sheriff Delain and Captain Michel implemented restrictions on the plaintiff while he was at the jail. It says that the plaintiff was not able to call his attorney or family, was not able to request medical treatment through the kiosk and frequently was locked down in his cell for faulty discipline without due process. The amended complaint says that Deputy District Attorney Lemkuil contacted the jail to order these restrictions for no reason and without cause. It asserts that Lemkuil conspired with Delain and Michel to cut off the plaintiff's communication with anyone outside the jail. The amended complaint alleges that Corporals West and Bergh carried out these restrictions that violated the plaintiff's rights "until December 02, 2020." Dkt. No. 1 at ¶32.

Conspiracy is not an independent basis of liability in §1983 actions. Smith v. Gomez, 550 F.3d 613, 617 (7th Cir. 2008) (citing Cefalu v. Village of Elk Grove, 211 F.3d 416, 423 (7th Cir. 2000)). "To state a claim under § 1983 through a conspiracy theory, there must be an actual deprivation of rights." See Florance v. Barnett, Case No. 23-1453, 2023 WL 7017085, at *2 (7th Cir.

Oct. 25, 2023) (citing Dix v. Edelman Fin. Servs., LLC, 978 F.3d 507, 518 (7th Cir. 2020)). The plaintiff must plead facts showing the existence of a conspiracy and "plausibly suggesting that the conspiracy caused a harm of constitutional magnitude." LaFaive v. Wolff, Case No. 23-2549, 2024 WL 277454, at *2 (7th Cir. Jan. 25, 2024) (citing Campos v. Cook County, 932 F.3d 972, 975 (7th Cir. 2019)).

The Seventh Circuit has held that "[r]estrictions on a detainee's telephone privileges that prevented him from contacting his attorney violate the Sixth Amendment right to counsel." Murphy v. Walker, 51 F.3d 714, 718 (7th Cir. 1995) (citing Tucker v. Randall, 948 F.2d 388, 390–91 (7th Cir. 1991)). The plaintiff says that when he filed grievances about these issues, West and Bergh denied them and told the plaintiff that Delain had the authority to suspend his communications with anyone outside the jail. The plaintiff does not say whether he was able to write to or otherwise communicate with his attorney. Because the plaintiff was a pretrial detainee, the law did not allow jail staff to punish the plaintiff for conduct unrelated to his behavior while at the jail. See Rapier v. Harris, 172 F.3d 999, 1002 (7th Cir. 1999). Yet the plaintiff alleges that he was locked down in his cell for allegedly disciplinary reasons through December 2, 2020, even though there was no cause for such discipline. Although these allegations are somewhat unclear and sparse, the court finds that they are sufficient to state violations of the plaintiff's Sixth Amendment right to counsel and his Fourteenth Amendment right to due process. The court will allow the plaintiff to proceed against Delain and Michel, whom he

alleges implemented the restrictions, and against West and Bergh, whom he says carried out these restrictions through December 2, 2020.

The court also will allow the plaintiff to proceed on his claim that Lemkuil conspired with Delain and Michel to impose these restrictions. As a Deputy District Attorney, Lemkuil is immune from suit for her actions related to "the judicial phase of the criminal process." Imbler v. Pachtman, 424 U.S. 409, 430–31 (1976); Davis v. Zirkelbach, 149 F.3d 614, 617 (7th Cir. 1998). But the plaintiff alleges that Lemkuil's call to the jail about these restrictions was unrelated to his state court criminal case or charges. If that is true (and the court must assume that it is for purposes of screening), Lemkuil would not be entitled to immunity for her conduct related to the alleged restrictions.

Aside from the plaintiff's allegations about the ongoing restrictions related to this conspiracy, his claims about other discreet events are untimely because they involve events that occurred before November 30, 2020. The plaintiff alleges that in February 2020, after Lemkuil had received a grievance he filed against her, jail staff began to retaliate against him by filing conduct reports and frequently locking him down in his cell. He alleges that Voster and Michel falsely told him that a state court had ordered the disciplinary actions. These allegations are similar to those on which the court is allowing the plaintiff to proceed and suggest a possible claim of retaliation, which could violate the First Amendment. See Bridges v. Gilbert, 557 F.3d 541, 546 (7th Cir. 2009). But the allegations are too vague to state a claim. The plaintiff does not say who at the jail was responsible for these conduct reports. He does not

say when or how frequently he received these reports or, more important, whether they occurred after November 30, 2020. Nor does he allege that Lemkuil was responsible for initiating these conduct reports and lockdowns, like he does with his above claim related to his restricted phone access. He says only that the conduct reports occurred after he filed his grievance. Because these allegations are vague and appear untimely, the court will not allow the plaintiff to proceed on a claim related to his February 2020 grievance against Lemkuil and the discipline that he says occurred after he filed it.

The plaintiff alleges that he was not provided notice or a hearing for his disciplinary restrictions in September and November 2019, and that the defendants denied his grievances about these issues. The plaintiff was entitled to notice and an opportunity to be heard on these restrictions before they were imposed. Higgs v. Carver, 286 F.3d 437, 438 (7th Cir. 2002) (citing Rapier, 172 F.3d at 1004–05). But because these discreet events occurred well before November 30, 2020, the plaintiff's claims related to them are untimely. He cannot proceed on a claim that the defendants denied his grievances and refused to provide him disciplinary hearings.

The plaintiff alleges that from February to March 2020, he was ill for over thirty days. He alleges that the jail restrictions prohibited him from using the jail kiosk to request medical treatment. Yet he also says that medical staff responded to his complaints multiple times and told him that they would see him at the next available appointment. The plaintiff had a right to adequate medical care while at the jail. See Miranda v. County of Lake, 900 F.3d 335,

352 (7th Cir. 2018) (citing Kingsley v. Hendrickson, 576 U.S. 389 (2015)). But he cannot proceed on this claim because the alleged events occurred well before November 30, 2020, so this claim also is untimely. Even if it were not untimely, the plaintiff does not say who was responsible for delaying his medical treatment. He says that he was not able to send medical requests through the jail's kiosk system, but he also says that Bergh emailed a nurse about the plaintiff's issues. The plaintiff says he received several responses to his requests, so his amended complaint does not suggest that Bergh interfered with his treatment. The plaintiff cannot proceed generally against "medical staff" as a group. See Gray v. Weber, 244 F. App'x 753, 754 (8th Cir. 2007) (affirming dismissal of prisoner's §1983 complaint alleging denial of medical care against defendants identified "only collectively as 'medical staff'"). The plaintiff's claim about the delay in his medical treatment is untimely and does not identify any defendant whom he believes to be responsible.

The plaintiff alleges that unspecified "Brown County administrative officials" restricted, withheld, seized and censored his mail. Dkt. No. 17 at ¶41. The plaintiff retained a limited right to send and receive mail while incarcerated. See Thornburgh v. Abbott, 490 U.S. 401, 413 (1989); Kaufman v. McCaughtry, 419 F.3d 678, 685 (7th Cir. 2005). But the plaintiff's allegations are insufficient to state a claim. He does not allege when his mail was restricted, saying only that it occurred for "two years." He does not say whether his restricted mail was legal mail, personal mail or something else. He does not say who restricted his mail and whether it was one of the defendants he names

in the amended complaint. Identifying those responsible as "administrative officials" does not provide sufficient notice to any defendant of the allegations against them. See Dalcollo v. Wills, Case No. 23-2348, 2024 WL 676766, at *1 (7th Cir. Feb. 20, 2024); see also Cash v. Marion Cnty. Jail, 211 F. App'x 486, 488 (7th Cir. 2006) (affirming district court's dismissal of suit naming Marion County Jail "staff" as defendants). The plaintiff may not proceed on a claim about his mail.

The plaintiff has not stated a claim against any other defendant. Although he generally asserts that all defendants "did not comply or follow[] policies and rules," he alleges no specific facts explaining what any other defendant did that violated his rights. Vaguely accusing all defendants of the same general misconduct is insufficient to state a claim against any of them. See Miller v. Smith, 220 F.3d 491, 495 (7th Cir. 2000); Dalcollo, 2024 WL 676766, at *1. The court will dismiss Lieutenant Halasi and Corporals Voster, Kuchta, Dimmer and Vetsch because the amended complaint does not state a claim against them.

The plaintiff also seeks to proceed against the defendants in their official capacities. Because all the defendants are employees of Brown County, the court construes these official capacity claims as if the plaintiff had brought them against Brown County itself (and Brown County also is a defendant). A local government such as a municipality or county "cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." Monell v. New York

City Dep't of Soc. Servs., 436 U.S. 658, 691 (1978) (emphasis in original). A municipality may "be held liable under § 1983 only for its own violations of federal law." Los Angeles County v. Humphries, 562 U.S. 29, 36 (2010) (citing Monell, 436 U.S. at 694). To assert municipal liability, the plaintiff "must demonstrate that there was an 'official policy, widespread custom, or action by an official with policy-making authority [that] was the "moving force" behind his constitutional injury.'" Estate of Perry v. Wenzel, 872 F.3d 439, 461 (7th Cir. 2017) (quoting Daniel v. Cook County, 833 F.3d 728, 734 (7th Cir. 2016)). "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" City of St. Louis v. Praprotnik, 485 U.S. 112, 138 (1988) (quoting Pembaur v. Cincinnati, 475 U.S. 469, 479–80 (1986) (emphasis in original)).

The plaintiff has not stated a claim against Brown County or any defendant in his or her official capacity. The plaintiff has not alleged that there was an official policy or procedure in place that led to his restrictions at the jail. He alleges only that some of the defendants conspired to violate his rights and restrict his phone and kiosk access on their own and for no reason. In fact, he alleges that the defendants' actions *violated* Brown County policies. The court will dismiss the plaintiff's official-capacity claims.

For the reasons the court explained in the previous order, the plaintiff cannot seek declaratory relief against any defendant named in the amended

15
Case 2:23-cv-01619-PP    Filed 05/29/24    Page 15 of 18    Document 18

complaint, all of whom are alleged to be Brown County employees. Dkt. No. 15 at 13–14. He also seeks injunctive relief on behalf of "all inmates and pretrial detainees" at the jail. But the plaintiff does not have standing to assert the rights of any other person incarcerated at the jail. See Lewis v. Casey, 518 U.S. 343, 349–50 (1996); Massey v. Helman, 196 F.3d 727, 739–40 (7th Cir. 1999). And because the plaintiff no longer is incarcerated at the jail, his request for injunctive relief against Brown County and its employees also is moot. See Maddox v. Love, 655 F.3d 709, 716 (7th Cir. 2011) (concluding that prayer for injunctive relief was moot because plaintiff was transferred to a different facility and failed to allege "a realistic possibility that he will again be incarcerated in the same state facility and therefore be subject to the actions of which he complains"). The plaintiff may proceed only on his request for damages.

In summary: the plaintiff may proceed on a claim against Sheriff Delain, Captain Michel, Corporals West and Bergh and Deputy District Attorney Lemkuil in their individual capacities for conspiring to restrict his access to his attorney and deny him due process at the jail between November 30 and December 2, 2020. The plaintiff may not proceed on any other claim or against any other defendant on allegations related to events that occurred and concluded before November 30, 2020. The plaintiff may not proceed against the defendants in their official capacities, and he may recover only damages.

## II. Motion for Extension of Time (Dkt. No. 16)

The same day the court received the plaintiff's amended complaint, it also received a motion seeking an extension of time. Dkt. No. 16. The plaintiff

16
Case 2:23-cv-01619-PP   Filed 05/29/24   Page 16 of 18   Document 18

says that he "did the best" he could to comply with the court's previous order and to file an amended complaint, which he gave to his institution's librarian for e-filing on April 26, 2024. Id. at 1. But he asks for an additional fifteen days "to review and correct grammar errors, and facts pertaining to" some defendants and "to correct the facts and legal claims, or legal argument, that [he] was unable to correct the details of." Id. at 1–2.

The court received the plaintiff's amended complaint (Dkt. No. 17), which is very similar to the original. The court has explained that most of the plaintiff's claims are untimely because they involve events that occurred over three years before he filed his original complaint. The court is allowing the plaintiff to proceed on the claims he properly has alleged that appear to be timely. The court will not give the plaintiff a second opportunity to amend his complaint to correct unspecified errors or facts; he has not given the court any reason to believe further amendment is necessary or warranted or that further amendment would change the claims on which the court is allowing him to proceed. The court will deny the plaintiff's motion for an extension of time.

### III. Conclusion

The court **DENIES** the plaintiff's motion for an extension of time to amend his complaint. Dkt. No. 16. The amended complaint (Dkt. No. 17) is the operative complaint.

The court **ORDERS** that defendants Brown County, Michael C. Halasi, Kurt M. Voster, Kayla M. Kuchta, Dustin R. Dimmer and Mitchell R. Vetsch are **DISMISSED**.

The court **ORDERS** the U.S. Marshals Service to serve a copy of the amended complaint and this order on Brown County Deputy District Attorney Wendy W. Lemkuil, Brown County Sheriff Todd J. Delain, Jail Captain Heidy J. Michel, and Corporals Zachary N. Bergh and Matthew M. West under Federal Rule of Civil Procedure 4. Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. §1921(a). Although Congress requires the court to order service by the U.S. Marshals Service, it has not made any provision for either the court or the U.S. Marshals Service to waive these fees. The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§0.114(a)(2), (a)(3). The U.S. Marshals Service will give the plaintiff information on how to remit payment. The court is not involved in collection of the fee.

The court **ORDERS** the defendants to file a responsive pleading to the complaint.

The court **ORDERS** that the parties must not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and filing dispositive motions.

Dated in Milwaukee, Wisconsin this 29th day of May, 2024.

        **BY THE COURT:**

        _____
        **HON. PAMELA PEPPER**
        **Chief United States District Judge**