UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JEAN PIOVANETTI,

> Plaintiff,

> v.                                    Case No. 23-cv-1619-scd

WENDY W. LEMKUIL, et al.,

> Defendants.

## DECISION AND ORDER GRANTING DEFENDANTS'
## MOTIONS FOR SUMMARY JUDGMENT

Plaintiff Jean Piovanetti, who is representing himself, is proceeding on claims against Brown County Deputy District Attorney Wendy Lemkuil, Brown County Sheriff Todd Delain, Captain Heidy Michel, Corporal Matthew West, and Corporal Zachary Bergh in connection with allegations that, between November 30, 2020 and December 2, 2020, they violated his Sixth Amendment right to access his attorney by imposing phone restrictions at the jail, violated his Fourteenth Amendment rights by "punishing" him without due process, and engaged in a conspiracy to violate his Sixth and Fourteenth Amendment rights. ECF No. 18 at 16. On May 15, 2025, Defendants filed motions for summary judgment. ECF Nos. 52 & 57. Because the undisputed facts show that Plaintiff had access to his attorney and was not under any disciplinary restrictions between November 30, 2020 and December 2, 2020, the Court will grant Defendants' motions for summary judgment and will dismiss the case.

## PRELIMINARY MATTERS

Before turning to the substance of Defendants' motions for summary judgment, the Court must address Plaintiff's response materials. *See* ECF Nos. 71-75. Under the Civil Local Rules, a

party opposing a motion for summary judgment must file a memorandum of law, a concise response to the moving party's statement of facts, and supporting evidence with citations to the record. *See* Civ. L. R. 56(b)(2) (E.D. Wis.). A response to the moving party's statement of undisputed facts must reproduce each numbered paragraph of the moving party's statement of facts followed by a response to each paragraph. *See* Civ. L. R. 56(b)(2)(B). If the fact is disputed, the party must include a specific reference to an affidavit, declaration, or other part of the record that supports the claim that a genuine dispute exists as to the fact stated by the moving party. *Id.* If the opposing party believes there are additional facts that prevent the entry of summary judgment, they should include a statement, consisting of short, numbered paragraphs that set forth each additional fact and include references to the affidavits, declarations, or other parts of the record that support the assertion. *See* Civ. L. R. 56(b)(2)(B)(ii).

On May 15, 2025, Defendants filed their motions for summary judgment. ECF Nos. 52 & 57. In those motions, they reproduced Federal Rule of Civil Procedure 56, Civil Local Rule 7, and Civil Local Rule 56, as required by the local rules. *See id*. On May 19, 2025, the Court entered a notice and order reminding Plaintiff that he had to file a memorandum of law, a concise response to the moving party's statement of facts, and supporting evidence in order to properly oppose the motion for summary judgment. ECF No. 66.

On January 22, 2026, Plaintiff filed his response materials. *See* ECF Nos. 71-75. Plaintiff filed a 28-page response brief that appears to compile different types of documents, with different text sizes, fonts, and spacing, and copied-and-pasted statutory text, in one incomprehensible and non-sensical document. ECF No. 71. He filed "responses" to the proposed findings of fact that do not indicate one way or another whether he actually agrees with or disagrees with a fact in connection with a majority of the proposed facts. ECF Nos. 73 & 74. In one "response" document,

2

he only responds to proposed facts #1, 2, 20, 64, 65, & 66. ECF No. 73. In the other "response" document, he only responds to facts #1, 2, 3, 5, 7, 12, & 14. ECF No. 74. Plaintiff also submits his own proposed facts, most of which are legal conclusions, and do not cite to supporting evidence. ECF No. 75. And he submits a Declaration, which again is mostly legal conclusions, and contain proposed facts over which Plaintiff has no personal knowledge. ECF No. 72.

The Seventh Circuit has "routinely held that a district court may strictly enforce compliance with its local rules regarding summary judgment motions." *Schmidt v. Eagle Waste & Recycling Inc.*, 599 F.3d 626 (7th Cir. 2010) (citation omitted). Therefore, the Court will deem admitted all of Defendants' proposed findings of fact and will disregard Plaintiff's deficient response materials that fail to comply with the local rules. *See Phoneprasith v. Greff*, No. 21-3069, 2022 WL 1819043 (7th Cir. June 3, 2022) (holding that a district court is entitled to deem unopposed facts admitted under Civ. L. R. 56(b)(4) regardless of a non-movant's detailed opposition brief, affidavit, and exhibits); *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021) (same).

## FACTUAL BACKGROUND

At the relevant time, Plaintiff was a pretrial detainee at the Brown County Jail. ECF No. 54, ¶1. Defendants are Brown County Deputy District Attorney Wendy Lemkuil, Brown County Sheriff Todd Delain, Captain Heidy Michel, Corporal Matthew West, and Corporal Zachary Bergh. *Id.*, ¶2; *see also* ECF No. 59, ¶¶2-5. The time period relevant to this lawsuit is between November 30, 2020 and December 2, 2020, *see* ECF No. 18 at 6, but the Court will provide some background information for better context.

About a year and a half before the relevant time period, on March 7, 2019, DA Lemkuil charged Plaintiff with: (1) First Degree Sexual Assault of a Child Under the Age of 16 by Use of

Threat or Force or Violence; (2) Child Enticement – Sexual Contact; and (3) Repeated Sexual Assault of the Same Child (at Least 3 Violations of 2nd Degree Assault). ECF No. 54, ¶¶3 & 4. Effective March 19, 2019, Attorney Jevon Jaconi represented Plaintiff in his criminal case. ECF No. 59, ¶11. As a part of that criminal case, a state court judge initially ordered "no contact" between Plaintiff and three minor children, one of whom was the victim. *Id.*, ¶12. On June 4, 2019, the state court judge amended the "no contact" order to include the mother of the victim (Plaintiff's wife) as well. *Id.*, ¶13.

Three months later, on September 11, 2019, the mother of the victim reported to DA Lemkuil that Plaintiff had been contacting her in violation of the "no contact" order as recently as earlier that day. ECF No. 54, ¶7. Plaintiff had allegedly been making intimidating and threatening comments to her in connection with serving as a witness in his criminal case. ECF No. 59, ¶¶30-33. DA Lemkuil checked the mother's phone to confirm the circumstances then called the jail to tell jail staff that Plaintiff was the subject of a "no contact" order, which he appeared to be violating using the jail's phone system. ECF No. 54, ¶8. Defendants explain that the jail has a phone system called "TurnKey" that inmates can use to send and receive messages, similar to an email. ECF No. 59, ¶34. DA Lemkuil explains that she has no authority at the jail, so she did not (and could not) order anyone at the jail to do anything, but she was aware that the jail had the ability through TurnKey to block Plaintiff from calling certain phone numbers. ECF No. 54, ¶¶9-11, & 14. DA Lemkuil also talked to Sheriff Delain on the phone to confirm the state court judge's "no contact" order and the phone number of the victim's mother. *Id.*, ¶¶12 & 13.

Later that day, on September 11, 2019, Sheriff Delain contacted Lieutenant Shartner (not a defendant) to place restrictions on Plaintiff's telephone usage, as required by the court order. ECF No. 59, ¶35. Lt. Shartner confirmed in an email that day,

4

> "I have restricted phone access and turnkey messaging access for Inmate Jean Piovanetti as requested. The only calls he should be able to make under his account is to his attorney. Also, the phone number ********** has been blocked from our securas system so this number cannot be reached from an inmate inside the jail. I have attached the visitation history for Inmate Piovanetti to this email."

*Id*., ¶36. After talking to Lt. Shartner, Cpl. West implemented the phone restriction and wrote in Plaintiff's inmate notebook, "Per DA Lemkule & Sheriff Delain, all phone privileges & TurnKey messages have been suspended, except for his attorney." *Id*., ¶¶37 & 40. Even though Plaintiff had phone restrictions, he could still contact Atty. Jaconi by entering the telephone number 920-246-4161. *Id*., ¶¶38 & 39. Toward that end, Plaintiff called his attorney eight times—on September 11, 2019, September 15, 2019 (twice), November 6, 2019, February 24, 2020, April 8, 2020, April 12, 2020, and October 9, 2020—and saw him in person ten times—on March 3, 2019, April 28, 2019, June 2, 2019, November 3, 2019, November 16, 2019, December 8, 2019, December 9, 2019, December 12, 2019, December 26, 2020, and November 15, 2020—while he was at the Brown County Jail. *Id*., ¶¶39, 45-55. Plaintiff was not prevented from contacting his criminal attorney at any time while he was incarcerated at the Brown County jail. *Id*., ¶45. Capt. Michel and Cpl. Bergh had no involvement in placing and/or implementing phone restrictions on Plaintiff. *Id*., ¶¶43, 44, & 59. Their only role in this case was to review an inmate complaint he filed, which alleged that he was not allowed to contact his attorney. *Id*., ¶¶60-62. They denied the inmate complaint because Plaintiff *did* have access to his attorney. *Id*.

On December 13, 2019, Plaintiff pled no contest to Count 2 and guilty to Count 3. *Id.,* ¶14. Attorney Jaconi's representation of Plaintiff then ended January 27, 2020. *Id*., ¶11. Between February 28, 2020 and October 13, 2020, Plaintiff did not have an attorney representing him. *Id*., ¶23. On October 13, 2020, Atty. Mongin entered an appearance as Plaintiff's attorney. *Id*., ¶19. About a month later, on November 17, 2020, Plaintiff was sentenced for his crimes. *Id*., ¶¶20 & 21. On December 2, 2022, Plaintiff transferred to the Dodge Correctional Institution. *Id*., ¶22.

During the time period relevant to this lawsuit, between November 30, 2020 and December 2, 2020, Plaintiff did not make or try to make any telephone calls to his attorney. *Id.*, ¶56. He also did not have any court appearances during that time. *Id.*, ¶22. And Plaintiff was not under any disciplinary restrictions during that period of time either. *Id.*, ¶¶57 & 58. Toward that end, Plaintiff was on Bravo Pod and had the same privileges as other inmates (with the exception of the TurnKey restriction). *Id.*

## LEGAL STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* All reasonable inferences are construed in favor of the nonmoving party. *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012) (internal quotations omitted).

## ANALYSIS

### 1. Section 1983's Personal Involvement Requirement

"Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a

6

constitutional deprivation." *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996). Indeed, "[t]o recover damages under §1983, a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right." *Whitfield v. Spiller*, 76 F.4th 698, 706 (7th Cir. 2023) *(quoting Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)). Liability under §1983 "depends on each defendant's knowledge and actions, not on the knowledge or actions of persons they supervise." *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009). "The purpose of sec. 1983 is to deter state actors . . . from using a 'badge of authority' to deprive individuals of rights guaranteed by the Constitution." *Fries v. Helsper*, 146 F.3d 452, 457 (7th Cir. 1998) (quoting *Wyatt v. Cole*, 504 U.S. 158, 161 (1992)).

The undisputed facts show that Capt. Michel and Cpl. Bergh had no involvement in placing and/or implementing phone restrictions on Plaintiff at the jail. *See* ECF No. 59, ¶¶43 & 44; *see also* ECF No. 73, ¶¶43 & 44. Their only involvement in this case was reviewing his inmate complaint, which alleged that he was not allowed to contact his attorney. They denied the inmate complaint because Plaintiff *did* have access to his attorney. Individuals functioning as complaint examiners are not liable under §1983 for simply doing their jobs and ruling on inmate complaints and appeals. *Burks*, 555 F.3d at 595; *see also George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation."). Therefore, Capt. Michel and Cpl. Bergh are entitled to summary judgment based on their lack of personal involvement.

## 2. Sixth Amendment: Denial of Access to an Attorney

To survive summary judgment on a Sixth Amendment denial of counsel claim, Plaintiff must put forth evidence from which a reasonable jury could conclude that: (1) Defendants imposed restrictions that prevented him from contacting his attorney; and (2) Plaintiff suffered specific prejudice to pending or contemplated litigation from the denial of access to his attorney. *See Dunham v. Willmann*, No. 22-CV-1033, 2025 WL 578485, at *3 (E.D. Wis. Feb. 21, 2025) (citing

*Murphy v. Walker*, 51 F.3d 714, 718 (7th Cir. 1995)). As the Seventh Circuit has explained, not allowing a pre-trial detainee to communicate with his lawyer *at all* would clearly be a Sixth Amendment violation. *Id*. (citing *Tucker v. Randall*, 948 F.2d 388, 390 (7th Cir. 1991)). But a pre-trial detainee's ability to call his lawyer is not "unlimited" and the Sixth Amendment right to counsel likely is not violated where there is evidence of some communication between client and lawyer. *Id*. When there are phone restrictions in place, "state officials could avoid liability if they 'identify legitimate reasons, security or otherwise, for limiting [detainee's] access to a telephone.'" *Id*. (citing *Gill v. Teigen*, Case No. 23-cv-256-pp, 2024 WL 3518652 at *7 (E.D. Wis. July 24, 2024)).

The undisputed facts show that Plaintiff was not prevented from contacting his attorney while at the Brown County Jail and that he was regularly able to contact his attorney at all times. ECF No. 59, ¶45; *see also* ECF No. 73, ¶¶45. Indeed, Plaintiff called his attorney eight times and saw an attorney in person ten times while at the Brown County Jail. *See* ECF No. 59, ¶¶39, 45-55. Plaintiff does not dispute these facts. *See* ECF No. 73, ¶¶39, 45-55. And although there was a phone restriction imposed on him pursuant to a state court "no contact" order, that phone restriction specifically excluded contact with his attorney. The Court separately notes that a state court "no contact" order is a legitimate reason to impose phone restrictions. Additionally, during the time period relevant to this lawsuit, between November 30, 2020 and December 2, 2020, Plaintiff did not actually try to make any phone calls to his attorney and he did not have any court appearances or legal proceedings during that time. ECF No. 59, ¶¶22 & 65. Plaintiff does not dispute these facts either. ECF No. 73, ¶¶ 22 & 65. In fact, Plaintiff had already been sentenced on November 17, 2020 and was simply awaiting transfer to state prison. ECF No. 59, ¶¶20 & 21. He therefore would not have suffered any prejudice to pending litigation from any denial of access to an attorney during that time anyway. Therefore, Defendants have met their burden to show that they did not violate his Sixth Amendment rights.

In response, Plaintiff argues that Defendants did not prove that the state court's "no contact" order was appropriate and/or necessary. ECF No. 75, ¶¶7-11; *see also* ECF No. 71. He states that DA Lemkuil never actually charged him with violating a court order and/or intimidating and threatening witnesses through phone calls. *Id*. He states that he was never given notice of those accusations, an opportunity to defend himself, or conduct an administrative investigation. *Id*. But Defendants were entitled to presume the validity of a state court "no contact" order; and they were not required to question or second guess whether the state court judge's decision was correct. Additionally, Plaintiff cannot now use this federal lawsuit to collaterally attack a state court judge's "no contact" order. Plaintiff could and should have raised any concerns with the "no contact" order with the state court judge who imposed it. Plaintiff had an attorney in his criminal case at that time who could have made that argument. That issue aside, Plaintiff was in fact allowed to communicate with his attorney at all times while at the jail, so even if that state court order was inappropriate and/or unnecessary, it did not affect the legal issue in this case—his Sixth Amendment right to counsel, which was never violated.

Plaintiff also argues that Defendants did not "have the authority to modify a court order." ECF No. 75, ¶13. Although the argument is not fully developed or totally clear, Plaintiff appears to be asserting that the "no contact" order only applied to a single phone number—the phone number of the victim's mother—but Defendants implemented that order incorrectly by preventing him from making any phone calls to *anyone* (with the exception of his attorney.) In other words, he appears to be making a First Amendment argument in connection with this right to associate with friends and family. However, Judge Pepper's screening order only allowed a Sixth Amendment claim to proceed, *see* ECF No. 18 at 6, and Plaintiff cannot raise new claims and theories of liability in an opposition brief to a motion for summary judgment. *See Silverman v. Motorola, Inc.,* 772 F. Supp. 2d 923, 936 (N.D. Ill. 2011) ("Plaintiffs cannot raise a new theory of liability in opposition to a motion for summary judgment."). It is clear from the undisputed record

9

that Plaintiff's Sixth Amendment rights were not violated at the jail. Therefore, Defendants are entitled to summary judgment on the Sixth Amendment claim.

### 3. Fourteenth Amendment: "Punishment" Without Due Process

Under the Due Process Clause of the Fourteenth Amendment, prisoners who have not been convicted of a crime cannot be "punished." *Bell v. Wolfish*, 441 U.S. 520, 536 n.16 (1977). Indeed, the law prevents jail staff from punishing a plaintiff for conduct unrelated to his behavior while at the jail. *See Rapier v. Harris*, 172 F.3d 999, 1002 (7th Cir. 1999). But when the punishment in question is reasonably related to a legitimate governmental purpose, then due process is not violated. *Martin v. Tyson*, 845 F.2d 1451, 1458 (7th Cir. 1998).

Contrary to the allegations in Plaintiff's complaint, the undisputed facts show that Plaintiff was not under any disciplinary restrictions between November 30, 2020 and December 2, 2020 and he was not "locked down in his cell" during that time. ECF No. 59, ¶¶57 & 58. Indeed, Plaintiff was on Bravo Unit at the time and had the same privileges as other inmates on that unit (with the exception of the TurnKey restriction). *Id*. Plaintiff does not dispute these facts at summary judgment. ECF No. 73, ¶¶57 & 58. Additionally, full development of the record shows that Plaintiff was already convicted and sentenced for his crimes *before* November 30, 2020, so the Fourteenth Amendment would not have applied to him at the time anyway. *See Hardemann v. Curran*, 933 F.3d 816, 823 (7th Cir. 2019).

In response, Plaintiff attempts to broaden the scope of this lawsuit by mentioning incidents he perceived as "punishment" that occurred *before* November 30, 2020. *See* ECF No. 71. But, as noted above, Plaintiff cannot change the scope of the lawsuit at summary judgment. Judge Pepper concluded in the screening order that Plaintiff's claims prior to November 30, 2020 were time-barred under Wisconsin's statute of limitations and that he could not proceed with them through this lawsuit. ECF No. 18 at 11 & 12. Plaintiff attempts to get around Judge Pepper's statute of limitations conclusion by simply mentioning the "continuing violation" doctrine. *See* ECF No.

10

71. But Plaintiff does not clearly articulate how the continuing violation doctrine applies to the specific facts of this case; and to the contrary, it would not apply when the various instances of "punishment" are discrete incidents that are unrelated to each other. *See Turley v. Rednour,* 729 F.3d 645, 651 (7th Cir. 2013) ("A violation is continuing where 'it would be unreasonable to require or even permit [a prisoner] to sue separately over every incident of the defendant's unlawful conduct.'"). Plaintiff's Fourteenth Amendment claim boils down to nothing more than vague and conclusory assertions that he was "punished" without due process while at the jail. Therefore, Defendants are entitled to summary judgment on the Fourteenth Amendment due process claim as well.

### 4. Conspiracy

To survive summary judgment on a conspiracy claim, Plaintiff must establish that: "(1) the individuals reached an agreement to deprive him of his constitutional rights, and (2) overt acts in furtherance actually deprived him of those rights." *Beaman v. Freesmeyer,* 776 F.3d 500, 510 (7th Cir. 2015). Plaintiff must "show an underlying constitutional violation" and "demonstrate that the defendants agreed to inflict the constitutional harm." *Daugherty v. Page*, 906 F.3d 606, 612 (7th Cir. 2018). Plaintiff must establish an actual deprivation of his rights to prevail on a conspiracy claim. *Dix v. Edelman Fin. Servs., LLC*, 978 F.3d 507, 512 (7th Cir. 2020). As discussed in the section above, Plaintiff has failed to establish an actual violation of his Sixth and Fourteenth Amendment rights, so he cannot establish a claim for conspiracy. Therefore, Defendants are entitled to summary judgment and the Court will dismiss the case.

11

**CONCLUSION**

**IT IS THEREFORE ORDERED** that Defendants' motions for summary judgment (Dkt. Nos. 52 & 57) are **GRANTED**; and this case is **DISMISSED**. The Clerk is directed to enter judgment accordingly.

Dated in Milwaukee, Wisconsin this 30th day of March, 2026.

_____
STEPHEN C. DRIES
United States Magistrate Judge

This order and the judgment to follow are final. Plaintiff may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **30 days** of the entry of judgment. *See* Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). If Plaintiff appeals, he will be liable for the $605.00 appellate filing fee regardless of the appeal's outcome. If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this Court. *See* Fed. R. App. P. 24(a)(1). Plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious. *See* 28 U.S.C. §1915(g). If Plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serious physical injury. *Id.*

Under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of judgment. The Court cannot extend these deadlines. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.